By GRAM, J.
On April 9, 1938, an application was fiied by William J. Varley setting forth that Thomas Varley, his father, had died March 10, 1919 and offering for probate the will of Thomas Varley. The application recited that. Thomas Varley left surviving him Mary Varley, deceased, his widow, William J. Varley, Mary Geist, and Thomas Varley, Jr., also deceased.
Hearing on the application was had May 16, 1938. The probate of the will v?as resisted by Mary Geist but at the conclusion of the hearing said will was admitted to probate by the Court.
At the time of the hearing on the application to probate the will and following the admission to probate the said Mary Geist raised the question, informally, as to the right of said William Varley to inherit under the will of his deceased father because of his failure, neglect, withholding and refusal to probate the will following the death of his father in 1919 and, particularly, since the will came into his actual custody and control in 1933 after the death of his mGther, Mary Varley.
On August 15, 1938, Mary Geist, through her counsel filed a formal application stating that she was one of the heirs at law of Thomas Varley; that he died March 8, 1919, leaving a will dated January 31, 1919; that Thomas Varley was a resident of Clark County and had *276 an estate consisting principally of real property; that Thomas Varley died leaving Mary Varley, his surviving spouse, Thomas Varley, a son, William Varley, a son, and Mary Varley Geist, a daughter, as his only next of kin; that Mary Varley, widow, died on October 18, 1933, and that Thomas Varley, Jr. died on August 24, 1930.
Applicant states further that by the terms of the will of Thomas Varley he devised all his personal property to his wife and a life estate in his real property to his wife with the remainder to his son, William Varley; that since 1922, William Varley has known of the existence of the will of Thomas Varley, has known the contents of the will and that he was named as a beneficiary; that from the date of the death of Thomas Varley, Sr., to the date of the death of Mary Varley-, said William Varley had access to the will and from the date of death of Mary Varley, October 18, 1933, to April 9, 1938, when he offered the will for probate the said William Varley had the .custody and control of said will; that at all times since the death of the said Thomas Varley it has been within the power of the said William Varley to cause the said Will to be offered for and admitted to probate; that notwithstanding the knowledge of the said William Varley of the existence and contents of the said Will and that he was named a beneficiary therein, and notwithstanding the power of said William Varley to cause the said Will to be offered for probate, said William Varley failed, neglected and refused to offer the said will for probate until April 9, 1938, and withheld the said Will from probate until April 9, 1938, as aforesaid.
The applicant prays the court to determine and. declare the effect of the failure and neglect of William Varley to cause the will of Thomas Varley to be offered for probate and the effect of the withholding of and refusal to offer the said Will for probate on the part of William Varley and to determine and declare the rights and interests of Mary Geist and the said William Varley by reason of the said failure, neglect, withholding and refusal on the part of said William Varley.
At the time of the hearing of the application to probate the will and on the request of counsel for said Mary Geist the Court called upon Mr. Varley to give his testimony in connection with his failure to produce the will at an earlier date.
.The examination of Mr. Varley is as follows:
EXAMINATION BY THE COURT:
“Q. Mr. Varley, you are the William Varley who was named in the Will of Thomas Varley, deceased?
A. I am.
Q. And named as the remainder man after the death of your mother?
A. I am.
Q. This Will, Mr. Varley, was filed in this Court on April 9th, 1938. What was the date of your father’s death?
A. March 8th, 1919.
Q. March 8 th, 1919. You filed this Will on April 9th, 1938. As I said, will you explain to the Court why this Will was not offered for Probate before that time?
A. I didn’t have control of that Will all that time. That Will was in my mother’s care.
Q. When did your mother die?
A. 1933; October 19th.-
Q. 1933? A. October 19th, 1933.
*277 Q. After her death, you had control of the Will?
A. I did.
Q. Why was it not offered for Probate then?
A. I never knew you had to Probate a Will unless you transferred property to some other person, in the event you sold. I thought you should have to have the Will probated to have the property deeded to whoever bought it. I was the sole beneficiary. I couldn’t see why I should have to Probate the Will.
Q. How would the fact you were the sole beneficiary become known unless you had the Will Probated?
A. Almost everybody in the place knew the Will and knew I was the beneficiary. Nobody contested it otherwise.
Q. How many brothers and sisters had you?
A. Had one brother and one sister.
Q. How did you imagine you would become sole beneficiary of this property if you did not Probate this Will when you had a brother and sister?
A. At the time I got control of that Will I only had a sister; my brother died in the meantime.
Q. Even if you had only a sister, how did you figure you- could become the owner of this property exclusively unless you Probated the Win?
A. The property was willed to' me.
Q. Do you mean, Mr. Varley, that you didn’t know that the Will was of no value whatever unless it was Probated?
A. Never knew it until this thing came up.
Q. COURT: I think that is all the questions I want to ask.”
QUESTIONS BY MR. HOLMES:
Q. Mr. Varley, when did you first know of the existence of the Will?
A. I imagine shortly after the Will was made. I knew there was a Will made.
Q. You knew you were the beneficiary?
A. I didn’t know I was the beneficiary; no, sir.
Q. Where was the Will kept?
A. It was kept in an envelope with some insurance policies and deeds to the property and everybody in the house and everybody who came in the house read the Will but me.
Q. When did you first read the Will?
A. About three years after the Will had been written up.
Q. Three years after it was made you first read it?
A. Yes, sir.
Q. That was during your
mother’s life? A. Yes, sir.
MR. HOLMES: That is all, Your Honor, as far as we are concerned.”
QUESTIONS BY COURT:
Q. Mr. Varley, your father died, you said in March 1919.
A. Yes sir.
Q. Was he ill long before his death?
A. He wasn’t sick at all. He died very suddenly.
Q. He died very suddenly?
A. No, he didn’t. He was sick five weeks; four or five weeks after the Will was drawn.
Q. The Will, according to its terms, says it was executed on the thirty-first day of January 1919. Do you know whether or not your father was ill at that time
A. I don’t think he was; he never complained of being ill.
Q. Do you know why he would sign his Will by mark?
A. He couldn’t write.
Q. He couldn’t write at all?. A. No.”
*278 QUESTIONS BY MR. HOLMES:
Q. Mr. Varley, you had possession of the Will from the time of your mother’s death to the present.
COURT: He testified to that.
A. Yes, sure.”
It will be noted from the testimony that the will in question was withheld from probate from the date of the father’s death, March 8, 1919, until April 9, 1938; that William Varley knew of the existence of the Will shortly after it was made; that he read the will about three years after it had been written and during his mother’s life and that he had possession of the will from the time of his mother’s death to the time of the offering for probate.
It is obvious from the reading of the will and from the testimony of William J. Varley that the only two people who had a legal right to request the probate of the will were Mary Varley, the wife of the deceased and Mr. Varley, himself, for the reason that Thomas Varley, Jr., and Mary Geist were not named in the will as beneficiaries.
Sec. 10543 GC which was the law of Ohio prior to January 1, 1932, with reference to the question in controversy reads as follows:
“No land, tenements, or hereditaments, shall pass to any devisee in a will, who for three years knows of its existence, and has it in his power to control it, unless within that time, he causes it to be offered for, or admitted to, probate. By such neglect, the estate devised to such devisee shall descend to the heirs of the testator.”
The new Probate Code effective January 1, 1932, provided in §10504-14 GC as follows:
. “No property or right, testate or intestate, shall pass to a beneficiary named in a will, knowing for three years of its existence and having it in his power to control it, who, without reasonable cause, intentionally conceals or withholds it or neglects or refuses within that time to cause it to be offered for or admitted to probate. By such neglect, the estate devised to such devisee shall descend to the heirs of the testator, not including any heir who has concealed or withheld the Will as aforesaid.” ■*
Under §10543 GC the one guilty of such neglect lost his rights under the will but did take as an heir of testator. Under §10504-14 GC such neglect results in the entire estate passing to the heirs of the testator, excluding the heir-guilty of the neglect mentioned in the statute.
It is the contention of counsel for Mary Geist, particularly, that the failure of William J. Varley to probate the will within three years after it came into his actual control and custody subjects him to-the punitive provisions of §10504-14 GC.
Counsel for Mr. Varley contend, that intentional concealing, withholding, neglecting and refusing to probate must be shown before a person can be subjected to the punitive effects in the last named statute and that it was the intention of the legislature by the enactment of the new section to make-less drastic the effect of failure to probate a will. In support of his contention he cited the case of Hoskins, Admrx. v Lentz, et al reported in 7 OO 214 and decided by Judge Chittenden.
It is difficult for the Court to believe that a man of Mr. William. J. Varley’s intelligence couid actually be ignorant of the necessity to probate a will which named him as the sole beneficiary of his fath *279 er’s estate following the life estate of his mother. It is an elementary fact that ignorance of the law does not excuse a failure to do that which the law requires. The Court does not believe that the facts in this case warrant the same conclusion as that reached by Judge Chittenden in the Hoskins case for the reason that the Court believes that Mr. Varley’s claimed ignorance of the law does not excuse his failure to probate the will either during his mother’s lifetime or, particularly, after his mother’s death when he had the exclusive custody of the will.
The Court believes and so holds that Mr. Varley’s failure to have the will probated during his mother’s life and particularly his failure to offer it for probate after his mother’s death amounts to an intentional withholding of and neglect to probate said will. Believing that his withholding and neglect to offer said will for probate for more than three years after his mother’s death brings him within the provisions of §10504-14 GC the Court finds that the estate of Thomas Varley, Sr., shall descend to the remaining heirs of Thomas Varley not including the said William Varley.
Entry accordingly with • exceptions noted for William J. Varley.